IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| RYAN PAUL VAN GORDEN | : | CHAPTER 13 |
| | : | |
| | : | CASE NO.: 5:21-bk-00569-HWV |
| | : | |
| Debtor | : | |
| | : | |
| PNC BANK, NATIONAL ASSOCIATION, | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| RYAN PAUL VAN GORDEN, | : | |
| | : | |
| Respondent. | : | |

**MOTION OF PNC BANK, NATIONAL ASSOCIATION FOR RELIEF
FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(1)
TO EXERCISE RIGHTS AGAINST COLLATERAL**

PNC Bank, National Association ("PNC"), by and through its undersigned counsel, hereby moves this Court for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to exercise its rights against certain real estate collateral and for waiver of the stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3). In support of its Motion, PNC Bank avers as follows:

**I.  INTRODUCTION**

1. This chapter 13 bankruptcy—filed by Ryan Paul Van Gorden (the "Debtor") on March 22, 2021—is the fourth chapter 13 case filed by the Debtor in the past three years. Each of the Debtor's bankruptcy cases (including this one) were filed on the proverbial eve of a

foreclosure sale and each prior case was dismissed—with the last case dismissed due to the Debtor's failure to comply with even the most basic requirements of the Bankruptcy Code.

2. This latest filing is nothing more than the next step in the Debtor's bad faith scheme to delay and obstruct PNC's efforts to foreclose its collateral—a commercial property that was abandoned by the Debtor years ago and remains vacant (causing risk to PNC's interests). For this and the other reasons outlined below, there is ample cause to lift the automatic stay to allow PNC to proceed with exercising its rights with respect to the collateral.

**II. FACTUAL BACKGROUND**

3. On June 27, 2018, the Debtor filed a voluntary petition for bankruptcy relief pursuant to chapter 13 of the Bankruptcy Code. The filing was prompted by a scheduled Sheriff's sale of the Debtor's residence (by another lender). The filing also stayed a Sheriff's sale of PNC's collateral that was scheduled for July 26, 2018. This first case was dismissed on January 10, 2019.

4. On January 30, 2019, the Debtor filed a second petition for bankruptcy relief, which stayed a Sheriff's sale that was scheduled to go forward on January 31, 2019. This second case was dismissed on August 29, 2019.

5. On February 27, 2020, the Debtor (jointly with his wife) filed a third petition for bankruptcy relief. The filing stayed Sheriff's sales of two properties owned by the Debtor (a commercial property and their residence) that were scheduled to go forward that day. This third case was dismissed, with prejudice, on April 1, 2020.

6. On March 22, 2021, the Debtor commenced this current bankruptcy by filing a *pro se* petition for relief under chapter 13. The filing stayed a Sheriff's sale of the commercial property that was scheduled for March 25, 2021. The Debtor did not file any of the other

2

required documents, including the creditor matrix, schedules, statement of financial affairs or proposed chapter 13 plan.

7.   On March 30, 2021, the chapter 13 trustee filed a Motion to Dismiss this bankruptcy case, with prejudice, as a bad faith filing. *See* Docket No. 12. The Motion to Dismiss is scheduled for a hearing on May 5, 2021.

**A.   The Debtor's Obligations to PNC and PNC's Collateral**

8.   In connection with a term loan extended to the Debtor, on or about November 27, 2013, the Debtor (and his non-debtor spouse) executed an Open-End Mortgage and Security Agreement (the "Mortgage") whereby they granted to PNC a mortgage on the real property located at 820 North 9th Street, Stroudsburg, Pennsylvania 18360 (the "Property"). A true and correct copy of the Mortgage is attached hereto as Exhibit A.

9.   The Debtor owns Van Gorden Citgo Lube Inc. ("Van Gorden Citgo"), a business that is no longer operating.

10.   The Property is a commercial property from which Mr. Van Gorden used to operate Van Gorden Citgo. Since at least November 2019, the Property has been vacant.

11.   The Debtor is obligated to PNC for two loans extended by PNC prior to the first bankruptcy filing: (A) a term loan of $230,000 extended directly to the Debtor (the "Term Loan"); and (B) a line of credit extended to Van Gorden Citgo that was guaranteed by the Debtor (the "Line of Credit").

12.   To document the Term Loan, Mr. Van Gorden executed a promissory note in favor of PNC that requires the Debtor to make monthly payments of $2,430.36 to PNC.

3

13. But for a single payment made during the Debtor's 2019 bankruptcy, the Debtor has not made payment to PNC on account of the Term Loan since February 2017—**over four years ago**.

14. On April 21, 2017, confessed judgments were entered in favor of PNC and against the Debtor in the Court of Common Pleas of Monroe County for his obligations to PNC as follows:

>   (a)   $191,507.65 in *PNC Bank, National Association v. Ryan P. Van Gorden*, Case No. 2017-02733
>
>   (b)   $34,138.94 in *PNC Bank, National Association v. Ryan Van Gorden and Jaclyn K. Van Gorden*, Case No. 2017-02721

15. By its terms, the Mortgage "secures all obligations, debts and liabilities" of the Debtor to PNC, including past and future obligations and claims. Ex. A at 2 ("Cross Collateralization"). Thus, both the Term Loan and the Line of Credit are secured by the Mortgage. PNC believes that it has the senior mortgage on the Property, though there are senior tax and municipal liens on the Property.

16. In March 11, 2020—in connection with the 2020 bankruptcy—PNC filed Claim Nos. 1 and 2, which asserted secured claims of $295,199.04 and $39,986.52, respectively, for the Debtor's obligations to PNC. True and correct copies of PNC's proofs of claim from the 2020 bankruptcy are collectively attached hereto as Exhibit B.

17. PNC is in the process of determining the current amount it is owed by the Debtor. In August 2020, PNC received a distribution of about $26,000 in overbid proceeds from a Sheriff's sale of a property owned by the Debtor's wife, which was applied to the balance owed on account of the Line of Credit (for which she is a guarantor). However, there has been no recovery on account of the Term Loan, and with interest, legal fees and expenses accruing since

4

122194267_1

Case 5:21-bk-00569-HWV    Doc 14    Filed 04/01/21    Entered 04/01/21 10:06:41    Desc
Main Document    Page 4 of 16

March 2020, PNC anticipates that the Debtor owes PNC substantially more than $300,000 at this point.

18. The Debtor has not paid the real estate taxes for the Property for at least six years. The real estate taxes are delinquent for 2018, 2019 and 2020, with more than $27,000 past-due. A true and correct copy of a January tax statement from Monroe County is attached hereto as Exhibit C. A municipal lien has also been filed against the Property by Brodhead Creek Regional Authority for unpaid water bills. A true and correct copy of a February statement for the outstanding water bills is attached hereto as Exhibit D.

19. In addition, PNC previously advanced more than $30,000 to pay past-due real estate taxes for 2015, 2016 and 2017. *See* Ex. B (Claim Summary for Claim No. 1 showing amount advanced for real estate taxes).

### B. Events During the 2018 Bankruptcy

20. The Debtor filed his first Chapter 13 case on June 27, 2018 with the assistance of legal counsel. He did not file his schedules, proposed Chapter 13 plan and related documents until September 8, 2018. Docket No. 19 for Case No. 5:18-bk-02697-JJT.

21. Because the Debtor delayed in filing his schedules and related documents, the meeting of creditors was twice postponed and scheduled for October 1, 2018. The Debtor failed to appear for the October 1 meeting of creditors—or for the subsequent meetings of creditors scheduled for November 19 and December 17. Docket Nos. 31, 39, 41.

22. During the 2018 case, PNC filed a Motion for Relief from the Automatic Stay to pursue its rights against the Property. Docket No. 33. The Debtor did not respond to PNC's motion and PNC was granted relief from stay to proceed with foreclosure of the Property. Docket No. 37.

23. The chapter 13 trustee subsequently moved to dismiss the bankruptcy case due to a material default under the proposed chapter 13 plan. Docket No. 40. The Debtor did not oppose the motion and the case was dismissed on January 10, 2019. Docket No. 44.

24. After the case was dismissed, the trustee filed his Final Report, which disclosed that the Debtor had not made any payments to the trustee pursuant to his proposed chapter 13 plan. Docket No. 46. During the 2018 case, the Debtor also did not make any payments to PNC.

25. After obtaining relief from stay, PNC rescheduled its Sheriff's sale of the Property for the morning of January 31, 2019.

### C. **Events During the 2019 Bankruptcy**

26. Literally on the eve of the January 31, 2019 sale (around 6:00 PM on January 30, 2019), the Debtor filed his second bankruptcy petition with the assistance of legal counsel. He again failed to file his schedules, statement of financial affairs or proposed chapter 13 plan with the petition.

27. In response to a Motion to Dismiss filed by the chapter 13 trustee, the Debtor filed his schedules, statement of financial affairs and proposed chapter 13 plan on February 21, 2019. Docket No. 17 for Case No. 5:19-bk-00393-RNO.

28. On March 5, 2019, PNC filed its second motion for relief from the automatic stay based on failure to make payments, inability to confirm a plan, and lack of good faith with respect to the second bankruptcy petition. Docket No. 24.

29. The Debtor did not respond to PNC's motion and on March 25, 2019, the Court entered an order granting it. Docket No. 29.

30. After being denied confirmation of his proposed chapter 13 plan, the Debtor was ordered to file an amended plan within thirty days. When he failed to do so, the chapter 13

6

trustee filed a motion to dismiss the case on July 24, 2019. Docket No. 42 for Case No. 5:19-bk-00393-RNO. The motion to dismiss was not opposed, and the case was ultimately dismissed on August 28, 2019. Docket No. 44.

31. PNC subsequently scheduled the Property for Sheriff's sale on January 30, 2020. The sale was later postponed to February 27, 2020.

### D. Events During the 2020 Bankruptcy Case

32. The February 27, 2020 Sheriff's sale of the Property and was again stayed when the Debtor filed his third bankruptcy case (jointly with his wife) less than an hour prior to the start of the sale. The Debtor was not represented by counsel during his third bankruptcy case.

33. The Debtor again failed to file his schedules, statement of financial affairs or proposed chapter 13 plan with the petition.

34. On March 6, 2020, the chapter 13 trustee moved to dismiss the Debtor's 2020 case—with prejudice and a 180-day bar against refiling—due to his failure to file the required creditor list and the Debtor's lack of good faith. Docket No. 12 for Case No. 5:20-bk-00709-RNO.

35. The motion to dismiss was not opposed, and on April 1, 2020 the case was dismissed with an order prohibiting the Debtor from filing for bankruptcy relief for a period of 180-days. Docket No. 18.

### E. Events Since 2020 Bankruptcy Case Dismissed

36. The Debtor's prior bankruptcy case was dismissed with prejudice on April 1, 2020—the beginning of the various government shut downs due to the COVID-19 pandemic. The pandemic significantly impacted Monroe County's ability to conduct Sheriff's sales, which

7

122194267_1

Case 5:21-bk-00569-HWV    Doc 14    Filed 04/01/21    Entered 04/01/21 10:06:41    Desc
Main Document    Page 7 of 16

resulted in delays and backlogs that did not allow the Property to be sold before the 180-day prohibition against refiling expired.

37. In May 2020, PNC filed a writ of execution to relist the Property for Sheriff's sale, and the Property was initially scheduled to be sold on October 29, 2020. The sale date was subsequently postponed by general court order to January 28, 2021 to allow Monroe County to move to an online auction platform for Sheriff's sales (and in person sales were not possible).

38. PNC voluntarily postponed the January 28 sale to March 25, 2021 so it could familiarize itself with the new online auction platform and sale procedures. The Debtor filed this—his fourth bankruptcy case in three years—three days prior to the scheduled sale of the Property. Due to the bankruptcy filing, PNC postponed the Sheriff's sale to May 27, 2021.

## III. RELIEF REQUESTED

39. PNC Bank hereby requests that this Court enter an order granting it relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow PNC to pursue its rights against the Property, including but not limited to proceeding with the Sheriff's sale that was stayed due to this bankruptcy filing.

40. Whether to grant a moving party relief from the automatic stay is within the discretion of the Bankruptcy Court based on the totality of the circumstances. *In re Milstein*, 304 B.R. 208, 211 (Bankr. E.D. Pa. 2004); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001); *In re Olick*, 221 B.R. 146, 161 (Bankr. E.D. Pa. 1998). Accordingly, "[w]hen deciding whether to modify the automatic stay, the court must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." *In re M.J. & K. Co.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993) (quotations omitted).

### A. PNC Bank Is Entitled to Relief from the Automatic Stay for Cause Pursuant to Section 362(d)(1).

41. PNC is entitled to relief from the automatic stay for "cause" pursuant to Section 362(d)(1).

42. Section 362(d)(1) provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying , or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

43. "Cause" under Section 362(d)(1) has no precise definition, and courts determine whether cause exists on a case-by-case basis. *International Business Machines v. Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (internal quotations omitted); *In re Plastech Engineered Products*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (internal quotations omitted) ("[U]nder § 362(d)(1), courts must determine whether discretionary relief is appropriate on a case-by-case basis."); *Milstein*, 304 B.R. at 211-12. As explained by one Court:

> As used in § 362(d)(1), the term "cause" is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations. In determining whether cause exists, the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code.

*Plastech*, 382 B.R. at 106 (quotations and citations omitted). Thus, "cause is an elastic concept." *Id.* at 109; *see also M.J. & K.*, 161 B.R. at 590 (finding that cause "is viewed as a broad and flexible concept").

44. For purposes of Section 362(d)(1), the party requesting relief from the automatic stay bears the burden of producing evidence of "cause" under Section 362(d)(1); if sufficient

9

cause is demonstrated, the burden then shifts to the debtor to show that the moving party is adequately protected. *Olick*, 221 B.R. at 160-61; *see also* 11 U.S.C. § 362(g); *In re Rocco*, 319 B.R. 411, 419 (Bankr. W.D. Pa. 2005); *Kaplan*, 264 B.R. at 321-22.

### 1. The Debtor's Failure to Make Payments to PNC and Pay Real Estate Taxes Constitutes Cause to Lift the Automatic Stay.

45. But for a single payment made during his 2019 bankruptcy, the Debtor has failed to make payments to PNC on account of the Term Loan since February 2017 (for more than **four years**). The Debtor made no payments to PNC during his first and third bankruptcies, and only made a single payment during his second bankruptcy.

46. Based on the severe delinquency in payments to PNC and the failure to make payments during the prior cases, it is unlikely that the Debtor will start making payments to PNC or even has sufficient income to do so.

47. It is well established that failure to make installment payments to a secured creditor is sufficient to satisfy the moving party's burden of demonstrating "cause" to lift the automatic stay. *See In re Giles*, 340 B.R. 543, 553 (Bankr. E.D. Pa. 2006); *In re Rambo*, No. 02-35226DWS, 2004 WL 231011, at *3 (Bankr. E.D. Pa. Jan. 29, 2004) ("Courts in this district have concluded the evidence of a debtor's post-petition default in mortgage payments meets the mortgagee's initial burden of production in establishing 'cause' for relief under section 362(d)(1)."); *In re Epic Capital Corp.*, 290 B.R. 514, 526 (Bankr. D. Del. 2003) ("[I]t is well established that a creditor can meet its initial burden of evidence production on the issue of 'cause' under § 362(d)(1) by introducing evidence of the debtor's failure to make post-petition installment payments on a secured debt."); *In re Hinchliffe*, 164 B.R. 45, 48 (Bankr. E.D. Pa. 1994) (same).

48. Here, payments to PNC are delinquent by more than four years—strongly suggesting that the Debtor lacks either the intent or the wherewithal to make the required payments.

49. In addition, the Debtor has failed to pay the real estate taxes assessed against the Property since at least 2015. PNC advanced about $30,000 in funds in 2019 to pay the past-due taxes for 2015, 2016 and 2017. Since then, the taxes have not been paid for 2018, 2019 and 2020, resulting in senior liens against the Property in excess of $27,000. *See* Ex. C. The Debtor has also failed to pay outstanding water bills for water service provided to the Property, also resulting in a lien filed against the Property. *See* Ex. D.

50. These unpaid real estate taxes and water liens, have significantly impacted PNC's interests in the Property—eroding the value of its collateral as these liens have priority over PNC's mortgage. There is no reason to believe that the Debtor's failure to pay the real estate taxes and water bills will change in 2021, to the continuing detriment of PNC's interests in the Property as additional obligations continue to accrue.

51. Due to the lack of payment to PNC for many years—and the Debtor's ongoing failure to pay the real estate taxes and water bills—PNC is entitled to relief from the automatic stay.

### 2. Cause Exists to Lift the Automatic Stay Because the Property Has been Abandoned by the Debtor.

52. Cause also exists to lift the automatic stay because the Debtor has abandoned the Property.

53. In connection with its administration of the Debtor's obligations, PNC routinely appraises and inspects the Property for environmental contamination.

11

54. In November 2019, PNC accessed the Property to conduct an appraisal and environmental audit (with authority of a state court order allowing use of a locksmith). At that time, the professionals retained by PNC advised PNC that the Property was vacant.

55. In October and November 2020, PNC against accessed the Property to conduct an appraisal and environmental audit (again with authority of a state court order allowing use of a locksmith). PNC's professionals advised PNC that the Property was still vacant.[1]

56. Because the Property is abandoned, it is not being maintained or monitored for vandalism or other issues. To protect PNC's interest in the Property, relief from stay is required to permit PNC to exercise its rights with respect to the Property, including obtaining access to the extent necessary and proceeding with the Sheriff's sale scheduled for the end of May.

### 3. Cause Exists to Lift the Automatic Stay Because this Case Was Filed in Bad Faith.

57. PNC is also entitled to relief from the automatic stay for cause because this bankruptcy case was not filed in good faith. *See In re Porter*, 371 B.R. 739, 745 (Bankr. E.D. Pa. 2007) ("[A] bad faith chapter 13 filing can establish cause to terminate the bankruptcy stay independent of the issue of adequate protection.").

58. In his prior bankruptcy cases, the Debtor did very little to pursue a good faith reorganization. In the 2018 case, after taking almost ten weeks to file his schedules, proposed chapter 13 plan, and related documents, he did nothing more. He failed to show up for the meeting of creditors that was rescheduled multiple times; he failed to make any plan payments to the chapter 13 trustee; and he failed to make any post-petition payments to PNC. He also did not

---

[1] Before obtaining access to the Property through a court order in 2019 and 2020, PNC (and its representatives) made multiple attempts to contact the Debtor via letter and telephone. The Debtor has not responded in any manner to any communications for several years.

respond to the motion for relief from stay filed by PNC, allowing an order to be entered by default.

59. The 2018 case was dismissed because the Debtor could not confirm a plan. Despite the fact that his financial circumstances had not changed, the Debtor filed a second chapter 13 case on the eve of a foreclosure sale of the Property, knowing that he could not fund a confirmable plan, with the sole purpose of causing further delay.

60. The Debtor's second bankruptcy was dismissed after it again became apparent that he could not propose a confirmable and feasible chapter 13 plan. During that second case, PNC's motion for relief from stay was granted as unopposed.

61. Again in an effort to delay and obstruct PNC's efforts to sell the Property, the Debtor filed a third chapter 13 bankruptcy in February 2020—less than an hour prior to the start of a Sheriff's sale. During that case, the Debtor did nothing but file a bare bones petition. He did not file a list of creditors or any of the other required documents.

62. Since that was the Debtor's third unsuccessful bankruptcy in as many years, the 2020 case was dismissed with prejudice, preventing the Debtor from filing for bankruptcy relief for a period of 180-days. The dismissal order was entered on April 1, 2020, so the 180-day prohibition expired in early October 2020.

63. Unfortunately, due to unavoidable delays caused by the COVID-19 pandemic (including Monroe County not holding any Sheriff's sales for most of 2020), PNC was not able to get to a Sheriff's sale of the Property before the 180-day prohibition expired. Monroe County finally resumed Sheriff's sales (through a new online platform) in January 2021. After successfully navigating these COVID-19 delays and the new online platform, a Sheriff's sale of the Property was scheduled to go forward on March 25, 2021.

64. That sale was once again derailed by the Debtor filing the current bankruptcy. Like before, the Debtor has filed nothing more than a bare bones petition. There is little chance that the Debtor's current bankruptcy (his fourth bankruptcy in the past three years) will be successful. Recognizing this—and the Debtor's bad faith filing history—the chapter 13 trustee has already moved to dismiss this case with prejudice.

65. There is little question that the Debtor is aware that he cannot successfully complete a chapter 13 plan (and was aware of that fact when he filed for bankruptcy relief in 2019 and 2020). He twice attempted to proposed confirmable plans in his 2018 and 2019 cases and failed. In his 2020 case, he did not even propose a chapter 13 plan. By engaging in this abuse of the bankruptcy process, the Debtor has successfully delayed PNC's foreclosure of the Property by almost three years—at substantial cost and prejudice to PNC.

66. To the extent the Debtor believes he may have equity in the Property (which PNC believes is unlikely due to its condition and environmental issues), he has had more than sufficient time to pursue a private sale of the Property since he abandoned it in 2019. Indeed, the fact that the Debtor filed this bankruptcy to prevent a Sheriff's sale of the Property—even though he seems to have no interest in either using or selling it—strongly implies that the filing was intended to simply frustrate PNC's efforts to exercise its rights. That is not a proper use of the bankruptcy process.

67. The Debtor has consistently acted in bad faith by filing serial bankruptcies over the past three years. PNC should therefore be granted relief from the automatic stay for cause to pursue its rights in the Property.

### B. The Stay Imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3) Should Be Waived.

68. PNC also requests that the Court order that the fourteen-day stay imposed by Federal Rules of Bankruptcy Procedure 4001(a)(3) not apply to the Order granting PNC relief from the automatic stay.

69. This case was filed in bad faith and after the Debtor allowed PNC to obtain relief from stay in his prior cases. His third case was promptly dismissed, with prejudice, after the Debtor failed to file anything more than a petition. Because of the pandemic, PNC was stymied in its efforts to sell the Property at Sheriff's sale before the 180-day prohibition against refiling expired (through no fault of its own).

70. If granted relief from the automatic stay, PNC can proceed with the Sheriff's sale of the Property that is scheduled for May 27, 2021. It is important that the stay be lifted well before this date to permit PNC to prepare (with the Sheriff's office) for the sale to proceed as scheduled. Imposition of the 14-day stay of the effectiveness of the order may result in the May 27, 2021 being cancelled, in which case PNC will need to start the sale process over and its efforts to sell the Property will be delayed by several months and at greater cost.

71. Further delay of PNC's efforts to exercise its rights against the Property is prejudicial to PNC. PNC therefore should be allowed to immediately enforce and implement the Order under the circumstances.

WHEREFORE, PNC Bank, N.A. respectfully requests that this Court enter an Order (A) granting PNC relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to exercise its rights against the Property, including but not limited to proceeding with the Sheriff's sale that was postponed and stayed due to this bankruptcy filing, and (B) ordering that the stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3) shall not apply.

15

122194267_1

Case 5:21-bk-00569-HWV    Doc 14    Filed 04/01/21    Entered 04/01/21 10:06:41    Desc
Main Document    Page 15 of 16

Dated: April 1, 2021              By:  /s/ Jennifer L. Maleski
                                       Jennifer L. Maleski
                                       Dilworth Paxson LLP
                                       1500 Market Street, Suite 3500E
                                       Philadelphia, PA 19102
                                       Phone: (215) 575-7000
                                       Phone: (215) 575-7200

                                       Attorney for PNC Bank, National Association